**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MZ-DC, INC., d/b/a DC PIZZA individually and on behalf of all other similarly situated,** | |
| *Plaintiff,* | |
| **v.** | **Civil Action No.:  1:20-cv-2651** |
| **ERIE INSURANCE EXCHANGE,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff MZ-DC, Inc., d/b/a DC Pizza, ("Plaintiff"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Erie Insurance Exchange, and in support thereof states the following:

### NATURE OF THE ACTION

1.      Plaintiff MZ-DC, Inc., d/b/a DC Pizza, owns and operates a pizzeria restaurant located at 1103 19th Street NW, Washington, D.C. 20036.

2.      To protect Plaintiff's business in the event the restaurant suddenly had to suspend operations for reasons outside of their control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Erie Insurance Exchange ("EIE"), including Business Income, Income Protection, Extra Expense, and Civil Authority coverage, as set forth in EIE's Insuring Agreement for Building(s) – Coverage I, Business Personal Property – Coverage II and Income Protection – Coverage III ("EIE Policy").

3. Plaintiff's EIE Policy No. Q970777375 became effective on August 19, 2019 and provides for the forthcoming coverages at all times relevant to this action and until August 19, 2020.

4. EIE's Policy provides "Business Interruption" coverage, whereas EIE promises to pay for "loss or damage caused by or resulting from a peril insured against" including *inter alia*, Income Protection, Extra Expense, and Civil Authority coverages.

5. Under the "Income Protection" coverage, EIE promises to pay for "loss of income sustained due to partial or total interruption of business" resulting directly from loss of or damage to property on the premises.

6. Under the "Extra Expense" coverage, EIE promises to pay for "loss of income sustained due to partial or total interruption of business resulting directly from loss of or damage to property on the premises.

7. Under the "Civil Authority" coverage, EIE promises to pay for "loss of income sustained due to partial or total interruption of business" resulting directly from loss of or damage to property on the premises.

8. Plaintiff was forced to suspend or reduce business at DC Pizza due to Orders published by civil authorities in the District of Columbia that required all persons to stay at his or her place of residence except as necessary to perform "essential activities."

9. Upon information and belief, EIE has, on a widescale and uniform basis, refused to pay their insureds under the Business Interruption, Income Protection, Extra Expense, and Civil Authority coverages for losses suffered due to COVID-19 and/or actions of civil authority(ies) that have required the necessary suspension of business, and any efforts to prevent

further property damage or to minimize the suspension of business and continue operations. Indeed, EIE has denied Plaintiff's claim under their EIE policy.

## JURISDICTION & VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and because (a) the Class consists of at least 100 members, (b) the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and (c) no relevant exceptions apply to this claim.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is a commercial insurance carrier admitted to the District and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## PARTIES

12.     Plaintiff MZ-DC, Inc. owns and operates DC Pizza, a restaurant located in the District of Columbia.

13.     Defendant Erie Insurance Exchange ("Defendant" or "EIE") is a commercial insurance carrier admitted to the District of Columbia and is incorporated and domiciled in the Commonwealth of Pennsylvania, with their principal place of business in Erie, Pennsylvania.

## FACTS

*A.     The Income Coverage Form Protecting Plaintiff*

14.     In return for the payment of a premium, EIE issued Policy No. Q970777375 to Plaintiff for a policy period of August 19, 2019 to August 19, 2020. A copy of EIE Policy No. Q970777375. *See*, Exhibit 1.

15.     Plaintiff has performed all of their obligations under Policy No. Q970777375, including the payment of premiums. The premises described in EIE's Policy declaration are

located at 1103 19th Street NW, Washington, D.C. 20036 ("described premises" or "covered property").

16. In the EIE Policy provided to Plaintiff, EIE agreed to pay for direct physical loss of or damage to the premises caused by or resulting from a peril against.

17. Plaintiff's EIE Policy defines "loss" as "direct AND accidental loss of **OR** damage to covered property."

18. Plaintiff's EIE policy does not exclude or limit coverage for losses from viruses.

19. Perils due to COVID-19 and/or actions of civil authority(ies) are losses under Plaintiff's EIE Policy.

20. Pursuant to Plaintiff's EIE Policy, EIE agreed to pay for their insureds' actual loss of "income" sustained and the necessary "extra expense" caused by action of civil authority that prohibits access to the premises. The Civil Authority coverage begins 72 hours after the time of the first action of civil authority that prohibits access to the premises and applies for a period of at least four (4) weeks from the date of which such coverage began.

21. EIE promised to provide Civil Authority coverage "when a peril insured against causes damage to property other than property at the described premises and agreed to pay for the actual loss of "income" sustained and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises.

22. In Plaintiff's EIE policy, EIE further promised to pay for actual loss of "income" for an additional sixty (60) days if Plaintiff's "income" is less than Plaintiff's income was prior to the loss.

23. EIE further promised to pay Plaintiff the actual loss of "income" sustained so long as such income does not exceed the "income" loss sustained, subject to the actual reduction of

"income" during the "interruption of business." EIE further promised to pay $100 per day for a seven (7) day period following the suspension of Plaintiff's business to cover the loss of "income" sustained while Plaintiff determines his actual income protection loss.

24.     EIE additionally agreed to pay the actual income protection loss for the length of time as would be required to resume normal business operations for up to twelve (12) consecutive months from the date of loss.

25.     The loss of "income" payment is not limited by the end of the policy period.

26.     The EIE Policy defines "income" as the sum of net income (net profit or loss before income taxes) that would have been earned or incurred and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests, and rents.

27.     The EIE Policy defines "extra expense" as the necessary expenses incurred by you during the "interruption of business" that would not have been incurred if there had been no direct "loss" to covered property caused by a peril insured against.

28.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance) or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

29.     EIE had the option to, but did not, include any viral exceptions in Plaintiff's EIE policy.

30.     Losses caused by COVID-19 and/or actions of civil authority(ies) and the related orders issued by local, state, and federal authorities triggered the Income Protection, Extra Expense, Civil Authority, and Sue and Labor provisions of Plaintiff's EIE Policy.

**B.     *The Covered Cause of Loss***

31.     The presence of COVID-19 and/or actions of civil authority(ies) has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's restaurant (the "Executive Orders").

<u>**The District of Columbia Executive Orders**</u>

32.     On March 16, 2020, the District of Columbia, through the Office of the Mayor, issued Order 2020-048 that specifically prohibited table seating at any restaurant or tavern in the District of Columbia beginning at 10:00 pm that night.

33.     The Order stated that a violation of the Order would result in criminal, civil and administrative penalties.

34.     Since March 16, 2020, the District of Columbia, through the Office of Mayor, has issued additional Orders, including Order 2020-0053, prohibiting table seating or dine-in service at any restaurant or tavern at least until April 24, 2020 and has prohibited any gathering of ten (10) or more persons anywhere, including in a restaurant or tavern.

35.     On May 13, 2020, the District of Columbia, through the Office of the Mayor, extended the aforesaid Executive Orders until, at least, June 8, 2020.

36.     On June 19, 2020, the District of Columbia, through the Office of the Mayor, issued Executive Order 2020-075.

37.     The aforesaid Executive Order permits licensed food establishments to serve patrons indoors at up to fifty (50%) of their maximum capacity, as listed in their Certificate of Occupancy.

38.     On March 23, 2020 and as a direct and proximate result of the Mayor's March 16, 2020 Order, DC Pizza ceased all operations at the business premises as their patrons could no longer access table or bar seating inside their business premises.

39.     As a further direct and proximate result of the Order, DC Pizza effectively furloughed all of their non-manager employees.

40.     The purpose of Executive Orders Nos. 2020-0048, 2020-053, and 2020-066, respectively, were to continue the District of Columbia's measures to slow the spread of the COVID-19 pandemic.

41.     As of the date of this filing, Plaintiff's business continues to lose income and incur extra expense.

**The Impact of COVID-19 and the Executive Orders**

42.     Executive Orders Nos. 2020-0048, 2020-053, 2020-75, and 2020-066 caused direct or accidental loss of or damage to the premises described under Plaintiff's policy, and the policies of the other Class members, by denying use of, and access to, the premises described in Plaintiff's EIE Policy and thereby caused a necessary suspension of operations.

43.     The Executive Orders, including the issuance of Executive Order Nos. 2020-0048, 2020-053, 2020-75, and 2020-066 prohibited access to Plaintiff's and the other Class members'

Covered Premises, as described in their policies, and the area immediately surrounding those premises.

44.     As a result of the presence of COVID-19 and/or the Executive Orders, Plaintiff and the other Class members lost income and incurred extra expense.

45.     On or about March 23, 2020, Plaintiff submitted a claim to EIE under his Policy.

46.     On March 27, 2020, EIE denied Plaintiff's claim, alleging Plaintiff's policy did not provide for loss of income coverage because there is "no direct physical loss" to Plaintiff's building or business personal property despite EIE's Policy covering losses other than, and in addition to, direct physical losses.

47.     Indeed, EIE has, on a widescale basis with many, if not all, of their insureds, refused to provide Income Protection, Extra Expense, and Civil Authority coverage due to the Executive Orders and/or COVID-19 resulting in the required suspension of business operations.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

49.     Plaintiff MZ-DC, Inc. seeks to represent nationwide classes defined as:

• The **"Income Protection Breach Class"** – All persons and entities that: (a) had Income Protection coverage under a property insurance policy issued by EIE; (b) suffered a suspension of their business related to actions of civil authority(ies) and/or COVID-19 at the premises covered by their EIE property insurance policy; (c) made a claim under their property insurance policy issued by EIE; and (d) were denied Income Protection coverage by EIE for the suspension of business resulting from the actions of civil authority(ies) and/or the presence or threat of COVID-19.

• The **"Extra Expense Breach Class"** – All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by EIE; (b) sought to minimize the suspension of business in connection with

actions of civil authority(ies) and/or COVID-19 at the premises covered by their EIE property insurance policy(ies); (c) made a claim under their property insurance policy issued by EIE; and (d) were denied Extra Expense coverage by EIE despite their efforts to minimize the suspension of their business caused by actions of civil authority(ies) and/or the presence or threat of COVID-19.

- The **"Civil Authority Breach Class"** – All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by EIE; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by EIE; and (d) were denied Civil Authority coverage by EIE for the loss of Business Income and/or Extra Expense caused by actions of civil authority(ies), including *inter alia*, Executive Orders.

50.    Plaintiff also seeks to represent nationwide classes defined as:

- The **"Business Income Declaratory Judgment Class"** – All persons and entities with Business Income coverage under a property insurance policy issued by EIE that suffered a suspension of their business due to actions of civil authority(ies) and/or COVID-19 at the covered premises (the "Business Income Declaratory Judgment Class").

- The **"Extra Expense Declaratory Judgment Class"** – All persons and entities with Extra Expense coverage under a property insurance policy issued by EIE that sought to minimize the suspension of their business in connection with actions(s) of civil authority(ies) and/or COVID-19 at the premises covered by their EIE property insurance policy.

- The **"Civil Authority Declaratory Judgment Class"** – All persons and entities with Civil Authority coverage under a property insurance policy issued by EIE that suffered loss of Business Income and/or Extra Expense caused by actions of civil authority(ies), including *inter alia*, Executive Orders.

51.    Excluded from each defined Class is Defendant and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

52.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

53.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

54.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

i.      EIE issued insurance policies to the members of the Class in exchange for payment of premiums by the Class members;

ii.     whether the Class suffered a covered loss based on the common policies issued to members of the Class;

iii.    whether EIE wrongfully denied all claims based on action(s) of civil authority(ies);

iv.     whether EIE wrongfully denied all claims caused by COVID-19;

v.      whether EIE's Income Protection coverage applies to a suspension of business based on action(s) of civil authority(ies);

vi.     whether EIE's Income Protection coverage applies to a suspension of business caused by COVID-19;

vii.    whether EIE's Extra Expense coverage applies to efforts to minimize a loss based on action(s) of civil authority(ies);

viii.    whether EIE's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

ix.    whether EIE has breached their insurance contracts through a blanket denial of all claims based on business interruption, income loss, extra expense, civil authority coverages or closures related to actions of civil authority(ies) and/or COVID-19; and

x.    whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

55.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under their Income Protection, Extra Expense, and Civil Authority coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

56.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this case, including cases insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

57.    **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Income Protection, Extra Expense, and Civil Authority coverages. The prosecution of separate actions by individual

members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

58.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

59.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT – INCOME PROTECTION COVERAGE
*(Claim Brought on Behalf of the Income Protection Breach Class)*

60.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61.     Plaintiff brings this Count individually and on behalf of the other members of the Income Protection Breach Class.

62.     Plaintiff's EIE insurance policy, as well as those of the other Income Protection Breach Class members, are contracts under which EIE was paid premiums in exchange for their promise to pay Plaintiff's and the other Income Protection Breach Class members' losses for claims covered by the policy.

63.     In each respective EIE Policy, EIE agreed to pay for their insureds' actual loss of business income sustained due to the necessary suspension of business due to a covered loss. EIE agreed to "pay for loss of business income that occurs within 12 consecutive months after the date of direct physical damage."

64.     "Income" is defined as the sum of net income (net profit or loss before income taxes) that would have been earned or incurred and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests, and rents.

65.     Actions of Civil Authority and/or COVID-19 caused direct and/or accidental loss of or damage to Plaintiff's covered property and the other Income Protection Breach Class members' covered premises, thereby requiring suspension of business at the other Income Protection Breach Class members' covered premises. Losses caused by actions of civil authority and/or COVID-19 thus triggered the Income Protection provision of Plaintiff's and the other Income Protection Breach Class members' EIE insurance policies.

66.     Plaintiff and the other Income Protection Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by EIE or EIE is estopped from asserting them, and yet EIE has abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

67.     By denying coverage for any business income losses incurred by Plaintiff and the other Income Protection Breach Class members in connection with the actions of civil authority(ies) and/or COVID-19, EIE has breached their coverage obligations under the Policies.

68.     As a result of EIE's breaches of the Policies, Plaintiff and the other Income Protections Breach Class members have sustained substantial damages for which EIE is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
*(Claim Brought on Behalf of the Extra Expense Breach Class)*

69.     Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

71.     Plaintiff's EIE insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which EIE was paid premiums in exchange for their promise to pay Plaintiff's and the other Extra Expense Breach Class members' losses for claims covered by the policy.

72.     In Plaintiff's EIE Policy, EIE also agreed to pay necessary Extra Expense that their insureds incur during the "period of restoration" "due to damage by a covered cause of loss" to the Covered Property.

73.     "Extra Expense" means the necessary expenses incurred by you during the "interruption of business" that would not have been incurred if there had been no direct "loss" to covered property caused by a peril insured against.

74.     Due to actions of civil authority(ies) and/or COVID-19, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at the covered property(ies).

75.     Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by EIE or EIE is estopped from asserting them, and yet EIE has abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

76.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the actions of civil authority(ies) and/or COVID-19, EIE has breached their  coverage obligations under the Policies.

77.     As a result of EIE's breaches of the Policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which EIE is liable, in an amount to be established at trial.

## COUNT III
### BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
*(Claim Brought on Behalf of the Civil Authority Breach Class)*

78.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

80.     Plaintiff's EIE insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which EIE was paid premiums in exchange for their promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

81.     Under Plaintiff's EIE Policy's Civil Authority coverage provision, EIE promised to pay "when a peril insured against causes damage to property other than property at the described premises and agreed to pay for the actual loss of "income" sustained and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises.

82.     The actions of civil authority(ies) triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's EIE insurance policies.

83.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by EIE or EIE is estopped from asserting them, and yet EIE has abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

84.     By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the actions of civil authorty(ies) and/or COVID-19, EIE has breached their coverage obligations under the Policies.

85.     As a result of EIE's breaches of the Policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which EIE is liable, in an amount to be established at trial.

**COUNT IV**
**<u>DECLARATORY JUDGMENT – INCOME PROTECTION COVERAGE</u>**
*(Claim Brought on Behalf of the Income Protection Declaratory Judgment Class)*

86.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

87.     Plaintiff brings this Count individually and on behalf of the other members of the Income Protection Declaratory Judgment Class.

88.     Plaintiff's EIE insurance policy, as well as those of the other Income Protection Declaratory Judgment Class members, are contracts under which EIE was paid premiums in exchange for their promise to pay Plaintiff's and the other Income Protection Declaratory Judgment Class members' losses for claims covered by the Policy.

89.     Plaintiff and the other Income Protection Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by EIE or EIE is estopped from asserting them, and yet EIE has abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the Income Protection Declaratory Judgment Class are entitled.

90.     EIE has denied claims related to actions of civil authority(ies) and/or COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

91.     An actual case or controversy exists regarding Plaintiff's and the other Income Protection Declaratory Judgment Class members' rights and EIE's obligations under the Policies to reimburse them for the full amount of business income losses incurred by Plaintiff and the other Income Protection Declaratory Judgment Class members in connection with the suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19.

92.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Income Protection Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

> i.    Plaintiff's and the other Income Protection Declaratory Judgment Class members' business income losses incurred in connection with the actions of civil authority(ies) and/or COVID-19 and the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19 are insured losses under their Policies; and

ii. EIE is obligated to pay Plaintiff and the other Income Protection Declaratory Judgment Class members for the full amount of the income losses incurred and to be incurred in connection with the actions of civil authority(ies) and/or COVID-19 during the period of restoration and the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19.

**COUNT V**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
*(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)*

93.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth hereinmn. Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

94.     Plaintiff's EIE insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which EIE was paid premiums in exchange for their promise to pay Plaintiff's and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the Policy.

95.     Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by EIE or EIE is estopped from asserting them, and yet EIE has abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other members of the Extra Expense Declaratory Judgment Class are entitled.

96.     EIE has denied claims related to the necessary suspension of businesses of their stemming from the actions of civil authority(ies) and/or COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

97.    An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and EIE's obligations under the Policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by them in connection with the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19.

98.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.   Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19 are insured losses under their Policies; and

ii.  EIE is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the actions of civil authority(ies) and/or COVID-19 the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19.

## COUNT VI
### DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE
*(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)*

99.    Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

100.   Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

101.   Plaintiff's EIE insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which EIE was paid premiums in exchange for their promise to pay Plaintiff's and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the Policy.

102.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by EIE or EIE is estopped from asserting them, and yet EIE has abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the Civil Authority Declaratory Judgment Class members are entitled.

103.    EIE has denied claims related to the actions of civil authority(ies) and/or COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

104.    An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and EIE's obligations under the Policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with the actions of civil authority(ies) and/or COVID-19.

105.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

> iii.   Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19 are insured losses under their Policies; and

> iv.    EIE is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred the covered losses related to the actions of civil authority(ies)

and/or COVID-19 the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

a. Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b. Entering judgment on Counts I-III in favor of Plaintiff and the members of the Income Protection Breach Class, the Extra Expense Breach Class, and the Civil Authority Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c. Entering declaratory judgments on Counts IV-VI in favor of Plaintiff and the members of the Income Protection Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and the Civil Authority Declaratory Judgment Class as follows:

   i. Income Protection, Extra Expense, and Civil Authority, losses incurred in connection with incurred in connection with the necessary suspension of their businesses stemming from the actions of civil authority(ies) and/or COVID-19 are insured losses under their Policies; and

   ii. EIE is obligated to pay for the full amount of the business income, extra expense, and civil authority losses incurred and to be incurred the necessary interruption of their businesses stemming from the actions of civil authority(ies) and/or COVID-19.

d. Ordering Defendant to pay both pre-judgment and post-judgment interest on any amounts awarded;

e. Ordering Defendant to pay attorneys' fees and costs of suit; and

f.   Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 21, 2020.

Respectfully submitted,

*/s/ Michael W Slocumb*
Michael W. Slocumb (988438)
SLOCUMB LAW FIRM, LLC
145 E. Magnolia Ave
Suite 201
Tel: (334) 741-4110
Fax: (251) 802-1881
mike@slocumblaw.com

**Counsel for Plaintiff**
**And the Proposed Classes**